UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

SIMON MOHAMED LAHLOU, *on behalf of himself and those similarly situated*,

**16 CV 8745**

*Plaintiff*,

**COLLECTIVE AND CLASS ACTION COMPLAINT**

v.

PAYAM INC. *d/b/a* COLBEH RESTAURANT *and* PEJAMN TOOBIAN, *individually*,

*Defendants.*

------------------------------------------------------------------------X

Plaintiff Simon Mohamed Lahlou, on behalf of himself and those similarly situated, through his counsel, The Harman Firm, LLP, alleges for his complaint against Defendants Payam Inc. d/b/a Colbeh Restaurant and Pejamn Toobian as follows:

## NATURE OF THE ACTION

1. Plaintiff Simon Mohamed Lahlou ("Plaintiff" or "Mr. Lahlou") was employed as a head waiter by Defendant Payam Inc. d/b/a Colbeh Restaurant ("Defendant Payam" or "Payam"). Defendant Payam operates several restaurant locations in the New York City metropolitan area, serving kosher food, Persian cuisine, and sushi. Defendant Pejamn Toobian ("Defendant Toobian" or "Mr. Toobian") is Defendant Payam's CEO.

2. Plaintiff, for himself and on behalf of all others similarly situated, seeks damages and costs against Defendants for (i) failing to pay the federal minimum wage for tipped employees; (ii) failing to pay the overtime premium rate for hours worked in excess of forty (40) in a work week; and (iii) conducting an invalid tip pool, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219.

1

3. Plaintiff, for himself and on behalf of all others similarly situated, also seeks damages and costs against Defendants for (i) failing to pay the New York state minimum wage for tipped employees; (ii) failing to pay the overtime premium rate for hours worked in excess of forty (40) in a work week; and (iii) conducting an invalid tip pool, in violation of the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 1–1200.

4. Plaintiff also individually seeks damages and costs against Defendants for terminating his employment in retaliation for complaining of Defendants' wage and hour violations, in violation of the FLSA and NYLL.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under the FLSA.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYLL, as they are so related to the FLSA claims that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

8. Plaintiff, at all times relevant hereto, was and is a resident of Essex County in the State of New Jersey.

9. Upon information and belief, at all times relevant hereto, Defendant Payam was and is a corporation organized under the laws of the State of New York in New York County with a Manhattan restaurant location at 32 West 39th Street, New York, NY 10018. On

information and belief, Payam also operates restaurant locations in Great Neck, at 75 N. Station Plaza, Great Neck, NY 11021, and Roslyn, at One The Intervale, Roslyn, NY 11576.

10. Upon information and belief, at all times relevant hereto, Defendant Toobian was and is a resident of Nassau County in the State of New York.

## COVERAGE UNDER FLSA

11. At all times relevant hereto, Plaintiff was Defendants' "employee" within the meaning of the FLSA.

12. At all times relevant hereto, Defendants were Plaintiff's "employers" within the meaning of the FLSA.

13. Defendants were, and continue to be, "employers" within the meaning of the FLSA.

14. At all times relevant hereto, Defendant Payam was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA.

15. Upon information and belief, Defendant Payam's annual gross revenue was in excess of five hundred thousand dollars ($500,000) during the relevant time period.

16. At all times relevant hereto, Plaintiff was "engaged in commerce" and subject to individual coverage of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

17. Pursuant to 29 U.S.C. § 207, Plaintiff seeks to prosecute his FLSA claims as a collective action on behalf of himself and others who currently or formerly worked as tipped employees within the meaning of the FLSA who performed similar responsibilities for Defendants (the "Collective Action Members") at any time during the three (3) year period immediately preceding the filing of the original complaint (the "Statutory Period").

18. Under the FLSA, tipped employees are defined as those who receive thirty dollars ($30.00) per month or more in tips.

19. The FLSA allows employers to pay less than the federally mandated minimum wage to tipped employees by taking a "tip credit," which allows employers to include tips when calculating the wages of tipped employees.

20. An employer must inform employees of the following before applying a tip credit:

   a. the tipped employee's base cash wage, which must be at least two dollars and thirteen cents ($2.13) per hour;

   b. the amount claimed by the employer as a tip credit, which may not exceed five dollars and twelve cents ($5.12) per hour;

   c. that the tip credit claimed by the employer may not be greater than the amount of tips received by the tipped employee; and

   d. that tipped employees must retain all tips they receive, with the exception of a valid tip pooling arrangement limited to those employees who customarily and regularly receive tips.

21. Defendants subjected Plaintiff and Collective Action Members to the same pay provision(s) in that (i) Plaintiff and Collective Action Members were not paid the federal minimum wage for tipped employees; (ii) were not compensated at the overtime premium rate for all hours worked in excess of forty (40) in a work week; and (iii) were governed by the same invalid tip pooling policy.

22. As a result of Defendants' violation of the minimum wage, overtime, and tip credit provisions of the FLSA, Defendants paid the Collective Action Members at an incorrectly low rate of pay.

23. Thus, the Collective Action Members are owed unpaid regular wages under the FLSA for the same reasons as Plaintiff.

24. Questions of law and fact common to Collective Action Members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all Collective Action Members. Among the questions of law and fact common to Plaintiff and other Collective Action Members are:

   a. whether Defendants employed Collective Action Members within the meaning of the FLSA;

   b. what proof of hours worked is sufficient where the employer fails in its duty to maintain accurate time records;

   c. whether Defendants failed to pay Collective Action Members the tipped minimum wage, in violation of the FLSA;

   d. whether Defendants failed to pay Collective Action Members overtime compensation for hours worked in excess of forty (40) hours per workweek, in violation of the FLSA;

   e. whether Defendants conducted an unlawful tip pool, in violation of the FLSA;

   f. whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

   g. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

## CLASS ACTION ALLEGATIONS

25. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff seeks to prosecute his NYLL claims on behalf of all current and former hourly, non-exempt servers and other tipped employees of Defendants whom Defendants (i) did not pay the New York state tipped minimum wage; (ii) did not pay at the overtime premium rate for hours worked in excess of forty (40) in a work week; and (iii) governed by the same invalid tip pooling policy.

26. While the exact number of Class Members is presently unknown, it is estimated that there are at least one hundred (100) Class Members.

27. The group of potential Class Members is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiff initiates this litigation for all persons similarly situated pursuant to Rule 23.

28. Despite the numerical size of the Class, the identities of Class Members can be ascertained through Defendant's payroll records.

29. Plaintiff and his counsel do not anticipate any difficulties in the management of this action as a class action.

30. Plaintiff is committed to vigorous prosecution of this action, will adequately represent the purported Class in this action, and has retained competent counsel experienced in class action litigation.

31. Plaintiff is a Class Member and has no interest antagonistic to or in conflict with other Class members.

32. This action raises numerous questions of law and fact which are of common and general interest to the Class members, including:

a. whether Defendants employed Collective Action Members within the meaning of the NYLL;

b. what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

c. whether Defendants failed to pay Class Members the tipped minimum wage, in violation of the NYLL;

d. whether Defendants failed to pay Class Members overtime compensation for hours worked in excess of forty (40) hours per workweek, in violation of the NYLL;

e. whether Defendants conducted an unlawful tip pool, in violation of the NYLL;

f. whether Defendants' violations of the NYLL are willful as that term is used within the context of the NYLL; and

g. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

33. The claims or defenses of the represented parties are typical of the claims or defenses of the Class.

34. Plaintiff has the same interests as other Class Members in prosecuting the claims against Defendants.

35. Plaintiff and all Class Members sustained damages as a result of Defendants' wrongful conduct.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37. Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for Class Members to redress the wrongs done to them individually.

38. Plaintiff and The Harman Firm, LLP will fairly and adequately assert and protect the interests of the Class.

## STATEMENT OF FACTS

39. Payam hired Mr. Lahlou as a dishwasher in or around 1996.

40. Mr. Lahlou was a reliable, dedicated employee throughout his employment at Payam, receiving promotions to busboy in 1998, waiter in 2004, and head waiter in 2006.

41. Mr. Lahlou was non-exempt from FLSA and NYLL overtime pay requirements throughout his employment at Payam.

42. As a head waiter, Mr. Lahlou's job duties included waiting tables, taking delivery and take-out orders, opening and closing the restaurant, and handling customer service issues.

43. Mr. Lahlou did not make hiring or firing decisions or develop Payam policy. He did not have the authority to discipline Payam employees, complete forms on Payam's behalf, or make payroll decisions for Payam employees.

44. Mr. Lahlou was supervised by Pejman Toubian, the general manager of Payam.

45. Mr. Toubian directed Payam's day-to-day operations. Mr. Toubian supervised and assigned work to Mr. Lahlou and other Payam employees; handled any complaints, whether from customers, vendors, or others; decided what items Payam would purchase and negotiated prices; had the authority to hire and fire Payam employees; and was responsible for determining Payam employees' hours and wages.

46. In sum, Mr. Toubian was in charge of managing Payam and assigned daily duties to Mr. Lahlou and other Payam employees.

47. As such, Mr. Lahlou did not fall under any exemption for overtime pay under the FLSA or NYLL throughout his employment at Payam.

48. For each week of his employment with Payam in the Statutory Period, Mr. Lahlou worked in excess of forty (40) hours per week.

49. In most weeks, Mr. Lahlou worked twelve (12) hours per day Saturdays through Thursdays and six (6) hours per day on Fridays, totaling a seventy-eight (78) hour work week.

50. In weeks in which Payam hosted a Shabbat party, Mr. Lahlou worked an additional four (4) hours per week, totaling an eighty-two (82) hour work week. Shabbat parties occurred approximately once a month and occasionally two (2) to three (3) times per month.

51. Payam was closed on Jewish holidays.

52. In weeks in which there was one Jewish holiday, Mr. Lahlou worked approximately sixty-six (66) hours per week.

53. In weeks in which there were two Jewish holidays, Mr. Lahlou worked approximately fifty-four (54) hours per week.

54. As Mr. Lahlou was a non-exempt employee, he was entitled to overtime premium pay for all hours worked in excess of forty (40) in a work week.

55. However, Payam never paid Mr. Lahlou at all for hours worked in excess of forty (40) in a work week, much less at the overtime premium rate.

56. In fact, Payam regularly misreported employees' hours, stating that employees worked only forty (40) hours or fewer in weeks where they actually worked in excess of forty (40) hours.

57. In weeks during which Mr. Lahlou worked seventy-eight (78) hours, he is owed thirty-eight (38) hours of pay at the overtime premium rate.

58. In weeks during which Mr. Lahlou worked eighty-two (82) hours, he is owed forty-two (42) hours of pay at the overtime premium rate.

59. In weeks during which Mr. Lahlou worked sixty-six (66) hours, he is owed twenty-six (26) hours of pay at the overtime premium rate.

60. In weeks during which Mr. Lahlou worked fifty-four (54) hours, he is owed fourteen (14) hours of pay at the overtime premium rate.

61. Throughout Mr. Lahlou's employment with Payam in the Statutory Period, he was paid according to Payam's tip pooling scheme, in which all tipped employees, including servers and busboys, were required to participate.

62. All servers and busboys were paid only in tips.

63. At the end of each week, Payam would collect all tips received and disburse them as follows:

   a. Twenty-five percent (25%) of all tips were retained by Mr. Toubian. At all relevant times, Mr. Toubian, as a general manager, was not entitled to participate in the tip pool, pursuant to the FLSA and NYLL.

   b. The remaining seventy-five percent (75%) of tips were distributed among Payam's employees.

64. Payam paid the entirety of employees' "wages" out of this tip pool.

65. From 2009 to the present, the federal minimum wage for tipped employees has been two dollars and thirteen cents ($2.13).

66. From January 1, 2011, to December 30, 2014, the minimum wage for tipped food service workers in New York State was five dollars ($5.00) per hour.

67. From December 31, 2015, to the present, the minimum wage for tipped employees in New York State has been seven dollars and fifty cents ($7.50) per hour.

68. As Payam paid employees only from the tip pool, Payam never paid tipped employees the federal or state tipped minimum wage.

69. As such, Payam violated the minimum wage provisions of the FLSA and NYLL.

70. Throughout his employment, Mr. Lahlou repeatedly complained of Payam's tip pooling practices and its failure to pay minimum wage and overtime.

71. However, Mr. Toubian repeatedly dismissed Mr. Lahlou's complaints, and none of the issues raised by Mr. Lahlou were ever resolved.

72. Mr. Lahlou was never disciplined or written up by Payam.

73. On or about May 8, 2016, Mr. Lahlou arrived at work and found that Payam had changed the restaurant's locks, so that Mr. Lahlou's key no longer worked.

74. Mr. Lahlou called and texted Mr. Toubian, but Mr. Toubian did not answer his call.

75. Later that afternoon, a kitchen supervisor known to Mr. Lahlou only as "Michael" told Mr. Lahlou only, "We cannot call you," and told Mr. Lahlou that Payam would let him know when he was scheduled for work.

76. To date, Mr. Lahlou has not been contacted by Payam.

77. By refusing to contact him or schedule him for work, Payam unlawfully terminated Mr. Lahlou's employment in retaliation for making complaints of overtime violations and tip pooling violations.

# CAUSES OF ACTION
## FIRST CAUSE OF ACTION
**Failure to Pay Minimum Wage in Violation of the FLSA**

78. Plaintiff, for himself and on behalf of those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 77 with the same force as though separately alleged herein.

79. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA.

80. At all times relevant to this action, Plaintiff was a tipped employee within the meaning of the FLSA, which defines a tipped employee as one who "customarily and regularly receive[s] more than $30 per month in tips."

81. The FLSA mandates that employers pay each of their tipped employees for each hour worked at an hourly rate not less than the federal minimum wage for tipped employees.

82. Defendants paid Plaintiff and other tipped employees entirely in tips. As such, Defendants never paid tipped employees the federally mandated minimum wage for tipped employees.

83. Plaintiff properly complained to Defendants about Defendants' minimum wage violations.

84. Defendants therefore were aware of their obligation to pay the minimum wage.

85. Defendants knowingly and willfully violated Plaintiff's rights under the FLSA by failing to pay the minimum wage for hours worked.

86. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants his unpaid compensation, liquidated damages, reasonable attorneys' fees, costs, and interest related to the action.

## SECOND CAUSE OF ACTION
**Unpaid Overtime in Violation of the FLSA**

87. Plaintiff, for himself and on behalf of those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 86 with the same force as though separately alleged herein.

88. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA.

89. The FLSA mandates that employers compensate employees at one-and-a-half (1.5) times their normal hourly rate for all hours worked over forty (40) hours each week.

90. Plaintiff properly complained to Defendants about Defendants' overtime violations.

91. Defendants therefore were aware of their obligation to pay employees the overtime premium rate for hours worked in excess of forty (40) in a work week.

92. Defendants knowingly and willfully violated the FLSA's overtime requirement by not paying Plaintiff at the overtime premium rates for hours worked in excess of forty (40) in a work week.

93. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants his back pay at the overtime premium rate, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

## THIRD CAUSE OF ACTION
**Tip Pooling in Violation of the FLSA**

94. Plaintiff, for himself and on behalf of those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 93 with the same force as though separately alleged herein.

95. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA.

96. At all times relevant to this action, Plaintiff was a tipped employee within the meaning of the FLSA, which defines a tipped employee as one who "customarily and regularly receive[s] more than $30 per month in tips." 29 U.S.C. § 203(t).

97. The FLSA prohibits employers from retaining employees' tips and prohibits employees who are not customarily tipped from participating in tip pools.

98. Defendants regularly retained a portion of tips received by tipped employees.

99. Plaintiff repeatedly complained of Defendants' invalid tip pooling practices.

100. As such, Defendants were aware of the tip pooling requirements under the FLSA.

101. Defendants knowingly and willfully violated Plaintiff's rights under the FLSA by failing to pay Plaintiff a base cash wage; claiming tip credits in excess of five dollars and twelve cents ($5.12) per hour; claiming tip credits in excess of the amount of tips received by Plaintiff; retaining a portion of Plaintiff's tips; and failing to provide Plaintiff with the information that the FLSA requires employers to provide tipped employees.

102. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants his unpaid compensation, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of the FLSA**

103. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 102 with the same force as though separately alleged herein.

104. The FLSA prohibits retaliation by an employer against an employee for complaining of practices illegal within the FLSA.

105. Plaintiff properly complained to Defendants about Defendants' minimum wage violations, Defendants' failure to compensate him for hours worked in excess of forty (40) in a work week at the overtime premium rate, and Defendants' invalid tip pooling practices.

106. Defendants retaliated against Plaintiff by terminating his employment.

107. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continue to suffer, substantial economic damages.

108. Due to Defendants' retaliation, Plaintiff is entitled to recover from Defendants back pay, front pay, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

**FIFTH CAUSE OF ACTION**
**Failure to Pay Minimum Wage in Violation of the NYLL**

109. Plaintiff, for himself and on behalf of those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 108 with the same force as though separately alleged herein.

110. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the NYLL.

111. The NYLL mandates that employers pay each of their tipped employees for each hour worked a wage of not less than the New York state minimum wage for tipped employees.

112. Defendants paid Plaintiff and other tipped employees entirely in tips. As such, Defendants never paid tipped employees the state-mandated minimum wage for tipped employees; any "wages" paid by Defendants were taken out of employees' tips.

113. Plaintiff properly complained to Defendants about Defendants' minimum wage violations.

114. Defendants therefore were aware of their obligation to pay the minimum wage.

115. Defendants knowingly and willfully violated Plaintiff's rights under the NYLL by failing to pay him the minimum wage for hours worked.

116. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

**SIXTH CAUSE OF ACTION**
**Unpaid Overtime in Violation of the NYLL**

117. Plaintiff, for himself and on behalf of those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 116 with the same force as though separately alleged herein.

118. At all relevant times, Plaintiff was employed by Defendants within the meaning of the NYLL.

119. The NYLL mandates that employers compensate employees at one-and-a-half (1.5) times their normal hourly rate for all hours worked over forty (40) hours each week.

120. Plaintiff properly complained to Defendants about Defendants' overtime violations.

121. Defendants therefore were aware of their obligation to pay the overtime premium rate for hours worked in excess of forty (40) in a work week.

122. Defendants willfully and intentionally violated the NYLL's overtime requirement by not paying Plaintiff at the overtime premium rates for hours worked in excess of forty (40) in a work week.

123. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his back pay at the overtime premium rate, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

## SEVENTH CAUSE OF ACTION
### Tip Pooling in Violation of the NYLL

124. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 123 with the same force as though separately alleged herein.

125. At all relevant times, Plaintiff was employed by Defendants within the meaning of the NYLL.

126. NYLL § 196-d states, "No employer…shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

127. Defendants took twenty-five percent (25%) of all tips collected by Defendants' tipped employees.

128. Plaintiff properly complained to Defendants about Defendants' tip pooling violations.

129. Defendants therefore was aware of the tip pooling requirements under the NYLL.

130. Defendants knowingly and willfully violated Plaintiff's rights under the NYLL by retaining a portion of tips received by Defendants' employees, including Plaintiff.

131. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his unpaid compensation, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

## EIGHTH CAUSE OF ACTION
### Retaliation in Violation of the NYLL

132. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 131 with the same force as though separately alleged herein.

133. The NYLL prohibits retaliation by an employer against an employee for complaining of practices illegal within the NYLL.

134. Plaintiff properly complained to Defendants about their failure to pay him the minimum wage, their failure to compensate him for hours worked in excess of forty (40) in a work week at the overtime premium rate, and their invalid tip pooling practices.

135. Defendants retaliated against Plaintiff by terminating his employment.

136. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

137. Due to Defendants' retaliation, Plaintiff is entitled to recover from Defendants back pay, front pay, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

# REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial;

G. For the seventh cause of action, damages to be determined at trial;

H. For the eighth cause of action, damages to be determined at trial;

I. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 10, 2016

By: _____

Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com
*Attorneys for Plaintiff*